UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | |
|---|---|
| TIMOTHY E. KELLY,<br><br>    Plaintiff,<br><br>v.<br><br>DINA KULENOVIC, et al.,<br><br>    Defendants. | Case No. 3:17-cv-01597<br><br>Judge Aleta A. Trauger<br>Magistrate Judge Newbern |

To: The Honorable Aleta A. Trauger, District Judge

### REPORT AND RECOMMENDATION

This prisoner civil rights action has been referred to the Magistrate Judge to dispose or recommend disposition of pretrial motions under 28 U.S.C. § 636(b)(1)(A) and (B). (Doc. No. 7.) Now pending is Defendant Shawn Phillips's motion to dismiss (Doc. No. 20), to which pro se Plaintiff Timothy E. Kelly has responded in opposition (Doc. No. 26). For the following reasons, the Magistrate Judge RECOMMENDS that Phillips's motion to dismiss be GRANTED and that Kelly's claims against him be DISMISSED WITH PREJUDICE.

**I.    Background**

    **A.    Kelly's Allegations[1]**

Kelly's "long history of mental illness" began when he was seven years old. (Doc. No. 1, PageID# 4.) He has received treatment from various medical providers, including the Mental Health Cooperative and Vanderbilt University Medical Center. (*Id.*) In 2017, when Kelly was

---

[1] These allegations are taken from Kelly's complaint and are taken as true for the purposes of ruling on the motion to dismiss.

incarcerated at the Riverbend Maximum Security Institution (RMSI), he "experience[ed] extreme episodes of schizophrenia" in which he would "blank out," "lose [his sense] of reality," and "self mutilate repeatedly" by cutting his left and right arms until he was bleeding heavily. (*Id.* at PageID# 2.) Instead of being referred to a doctor or transferred to an "institution like [the] Lois M. De[B]erry Special Needs Facility," Kelly was "placed in four[-]point restraints." (*Id.*) Kelly alleges that Defendant Dina Kulenovic, a mental health supervisor, ignored his condition and that Defendant Mark Collins, also a mental health supervisor, refused to comply with the recommendations offered by the mental health therapist assigned to Kelly's unit and thereby denied Kelly the "correct care."[2] (*Id.*)

In response to the grievances that he filed regarding his confinement at RMSI, Kelly was transferred to the Morgan County Correctional Complex (MCCC) in August 2017. (*Id.* at PageID# 4.) He states that, there, he experienced "harsh supermax confinement" consisting of a twenty-four-hour lock down inside his cell or twenty-three hours of lock down and one hour of recreation. (*Id.* at PageID# 3.) He further alleges that "[m]ental health employee[s] [did] not provide adequate care" in accordance with MCCC "policy and regulations." (*Id.*) Specifically, Kelly states that, under Policy 113.87, the Level 3 Supportive Living Unit (SLU) where Kelly was housed must "provide a structured environment designed to assist seriously mentally ill inmates in functioning psychosocially and vocationally at the highest possible level within the correctional setting . . . ." (*Id.*) Kelly states that such an environment would include four hours each day of group therapy. (*Id.*) He alleges that the practices of his unit "are not even close to meeting" that policy and that

---

[2]     On May 17, 2018, a summons for Collins was returned unexecuted with a note that he is "deceased." (Doc. No. 14, PageID# 73.) The Court has informed Kelly that if he intends to prosecute a claim against Collins's estate, he must file a proper motion to substitute by February 25, 2019. (Doc. No. 29, PageID# 142.)

2

inmates occasionally do not receive any group therapy. (*Id.*) Kelly states that Defendant Amanda Hynes forced Kelly to live in such conditions despite her awareness that they "were not suitable for [him,]" and that Defendant Shawn Phillips, then the warden of MCCC, "allow[ed] such a situation to take place even thou[gh he was] made aware [of it], several times . . . ." (*Id.* at PageID# 3–4.)

B. **Procedural History**

Kelly filed this action on December 12, 2017, while he was incarcerated at the MCCC, alleging that Defendants' actions violated the Eighth Amendment and the Americans with Disabilities Act (ADA) and that his transfer to the MCCC was retaliatory. (*Id.* at PageID# 1, 4, 5.) Kelly seeks $500,000.00 in damages and transfer to a facility "suitable for treating [his] needs . . . ."[3] (*Id.* at PageID# 6.)

In a March 21, 2018 order (Doc. No. 7) and accompanying memorandum (Doc. No. 6), the Court granted Kelly's application to proceed *in forma pauperis* (Doc. No. 3) and conducted the screening of his complaint required by the Prison Litigation Reform Act, 28 U.S.C. § 1915A. The Court found that Kelly had stated claims for deliberate indifference to his medical needs against all defendants but dismissed his retaliation and ADA claims. (Doc. No. 6, PageID# 34; Doc. No. 7, PageID# 42.) The Court's screening order did not address a March 1, 2018 filing in which Kelly notified the Court that he had been transferred to the Northeast Correctional Complex (NECC) in Mountain City, Tennessee, and purported to add to his complaint a "factual argument" concerning his confinement at the RMSI. (Doc. No. 5, PageID# 23–24.) He also sought to add to his request for relief that the defendants have their "license[s] revoked." (*Id.* at PageID# 25.) Kelly made two

---

[3] Kelly's complaint also contained a request for appointment of counsel (Doc. No. 1, PageID# 7), which the Court denied by separate order (Doc. No. 28).

additional filings, neither docketed as a motion, in which he sought to supplement the factual allegations of his complaint or clarify the relief he is seeking in this lawsuit. (Doc. Nos. 9, 17.) The Court addressed those filings in its January 28, 2019 order. (Doc. No. 28.)

After receiving an extension of time to respond to Kelly's complaint (Doc. No. 16), Phillips, who is now the warden at the Northwest Correctional Complex (NWCC),[4] timely filed a motion to dismiss (Doc. No. 20) and a supporting memorandum (Doc. No. 21). Phillips argues that, to the extent Kelly seeks to hold him liable for the actions of his former subordinates at the MCCC, Kelly has failed to allege that Phillips had sufficient involvement in violating Kelly's rights. (Doc. No. 21, PageID# 102.) Phillips argues in the alternative that Kelly was placed in solitary confinement in the SLU in an effort to "address [his] illness" and, therefore, that Phillips did not disregard Kelly's medical needs. (*Id.* at PageID# 102, 105.) Finally, Phillips argues that, even if Kelly was deprived of group therapy in violation of an MCCC policy, that denial does not amount to a constitutional violation given that Kelly has not alleged a complete disregard of his condition. (*Id.* at PageID# 106.)

Kelly did not timely respond to Phillips's motion. On September 18, 2018, Kelly filed a "Motion to Include as Evidence" a notarized document dated March 28, 2017, and addressed to Defendant Kulenovic, in which Kelly complained that he was receiving inadequate medical care at RMSI. (Doc. No. 24, PageID# 113–15.) Kelly's motion also stated that he had been transferred to the NWCC, where he was not able to send out or receive legal mail. (*Id.* at PageID# 113.) On October 4, 2018, the Court denied Kelly's motion, explaining that the document he sought to introduce into evidence was not relevant to any motion before the Court. (Doc. No. 25, PageID#

---

[4] *Northwest Correctional Complex*, Tennessee Department of Correction, https://www.tn.gov/correction/sp/state-prison-list/northwest-correctional-complex.html (last visited February 12, 2019).

4

125.) The Court also extended the deadline for Kelly to respond to Phillips's motion until October 26, 2018, noting that the motion had been sent to the NECC rather than the NWCC, where Kelly is now housed. (*Id.* at PageID# 124–25.)

Kelly's response to Phillips's motion to dismiss, postmarked October 25, 2018, was docketed on November 5, 2018. (Doc. No. 26, PageID# 130.) In it, Kelly does not respond directly to any of Phillips's arguments. (*Id.* at PageID# 127.) Instead, Kelly alleges that he has been receiving "pure discriminatory" treatment from health officials at the NWCC, where Phillips is now the warden. (*Id.* at PageID# 128.)

**II.     Legal Standard**

In deciding a Rule 12(b)(6) motion to dismiss for failure to state a claim upon which relief can be granted, the Court views Kelly's allegations in the light most favorable to him and accepts all well-pleaded factual allegations as true. *Ashcroft v. Iqbal*, 556 U.S. 662, 678–79 (2009). Federal Rule of Civil Procedure 8(a)(2) requires only "a short and plain statement of the claim." Fed. R. Civ. P. 8(a)(2). However, that statement must allege sufficient facts to show that the claims are "plausible." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007).

"The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 557). To meet it, Kelly must plead more than "labels and conclusions," "a formulaic recitation of the elements of a cause of action," or "naked assertions devoid of further factual enhancement." *Id.* (alterations omitted) (quoting *Twombly*, 550 U.S. at 555, 557). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* Finally, "[a] document filed *pro se* is to be liberally construed, and a *pro se* complaint, however inartfully

5

pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (quoting *Estelle v. Gamble*, 429 U.S. 97, 106 (1976)).

**III.    Analysis**

Kelly has not alleged sufficient facts to state a plausible deliberate indifference claim against Phillips.[5] Specifically, Kelly has not adequately alleged that Phillips or any other MCCC employee was aware of a substantial risk of harm to Kelly caused by a medical condition. Therefore, regardless of whether Kelly's allegations against Phillips are construed as seeking individual or supervisory liability, they fail to state a claim of deliberate indifference to his medical needs.

**A.    Supervisory Liability**

Kelly alleges that Phillips violated the Eighth Amendment by "allowing" Kelly to be placed in solitary confinement and deprived of group therapy. (Doc. No. 1, PageID# 4.) Phillips construes this allegation as asserting that he should be held liable for the conduct of his former MCCC subordinates and argues that Kelly has not sufficiently alleged Phillips's involvement in the subordinates' conduct for liability to attach. (Doc. No. 21, PageID# 102.) Alternatively, Phillips argues that Kelly has not alleged facts to show that his former subordinates disregarded Kelly's condition. (*Id.* at PageID# 104.) In his response in opposition, Kelly does not resolve the ambiguity

---

[5]    Kelly does not specify whether he has sued Phillips in his individual or official capacity and Phillips does not address this ambiguity in his motion to dismiss. (Doc. Nos. 1, 21.) The Court construes Kelly's complaint as asserting only an individual capacity claim against Phillips. Kelly has requested monetary damages, his allegations do not refer to the official title of Phillips (or of any defendant), and the lack of a sovereign immunity argument in Phillips's motion to dismiss indicates that he construed Kelly's complaint as asserting only an individual capacity claim. *See Cass v. City of Dayton*, 770 F.3d 368, 374 n.2 (6th Cir. 2014) (construing plaintiff's unlabeled claim against defendant as an individual capacity claim where defendant did not object to the complaint's ambiguity and had sufficient notice that he was being sued in his individual capacity).

about whether he is seeking to hold Phillips liable in a supervisory capacity or respond to any of Phillips's arguments. (Doc. No. 26.) Instead, he addresses what he perceives to be the "discriminatory" treatment he is now experiencing at the NWCC, where Phillips is the warden. (*Id.* at PageID# 128.)

Under 42 U.S.C. § 1983, Kelly may state a cause of action against anyone who "'deprived [him] of rights, privileges or immunities secured by the Constitution or laws of the United States'" while acting under color of state law. *Rhinehart v. Scutt*, 894 F.3d 721, 735 (6th Cir. 2018) (quoting *Bennett v. City of Eastpointe*, 410 F.3d 810, 817 (6th Cir. 2005)). However, liability under § 1983 "'cannot be imposed under a theory of *respondeat superior*'" and "'proof of personal involvement is required for a supervisor to incur personal liability.'" *Grinter v. Knight*, 532 F.3d 567, 576 (6th Cir. 2008) (quoting *Miller v. Calhoun Cty.*, 408 F.3d 803, 817 n.3 (6th Cir. 2005)). "[A] prerequisite of supervisory liability under § 1983 is unconstitutional conduct by a subordinate of the supervisor." *McQueen v. Beecher Cmty. Sch.*, 433 F.3d 460, 470 (6th Cir. 2006). When such conduct exists, a plaintiff seeking to state a claim for supervisory liability must allege that the supervisor "'implicitly authorized, approved or knowingly acquiesced in the unconstitutional conduct . . . .'" *Grinter*, 532 F.3d at 575 (quoting *Bellamy v. Bradley*, 729 F.2d 416, 421 (6th Cir. 1984)).

The Court need not determine whether Kelly has sufficiently alleged that Phillips was involved in the decisions the MCCC employees who put Kelly in lock down and deprived him of group therapy because Kelly has not adequately alleged that those employees were deliberately indifferent to his medical needs. "The Eighth Amendment prohibits prison officials and doctors from showing deliberate indifference to an inmate's serious medical needs." *Mattox v. Edelman*, 851 F.3d 583, 597 (6th Cir. 2017) (citing *Estelle*, 429 U.S. at 104). A deliberate indifference claim

7

has an objective and subjective component. To satisfy the objective component, Kelly must allege that, at the time of the relevant conduct, he had a "sufficiently serious" medical need. *Reilly v. Vadlamudi*, 680 F.3d 617, 624 (6th Cir. 2012) (quoting *Blackmore v. Kalamazoo Cty.*, 390 F.3d 890, 895 (6th Cir. 2004)); *see also Clark-Murphy v. Foreback,* 439 F.3d 280, 292 (6th Cir. 2006) (holding that it was clearly established that the Eighth Amendment's protection against deliberate indifference to serious medical needs applies to psychiatric needs). Kelly can do this by alleging either that he had a minor or non-obvious condition that was diagnosed by a physician as mandating treatment or that he had an obvious condition—one that "'even a layperson would easily recognize [requires] a doctor's attention'"—that was not treated within a reasonable time. *Mattox v. Edelman*, 851 F.3d 583, 598 (6th Cir. 2017) (quoting *Blackmore*, 390 F.3d at 897, 899). The subjective component requires Kelly to allege that Phillips acted with a sufficiently culpable state of mind, "equivalent to criminal recklessness," in denying Kelly needed care. *Rhinehart*, 894 F.3d at 738 (quoting *Santiago v. Ringle*, 734 F.3d 585, 591 (6th Cir. 2013)). Kelly must allege that Phillips "'subjectively perceived facts from which to infer substantial risk to [Kelly], that he did in fact draw the inference, and that he then disregarded that risk' by failing to take reasonable measures to abate it." *Id.* (quoting *Comstock v. McCrary,* 273 F.3d 693, 703 (6th Cir. 2001)).

Even assuming, as Phillips does (Doc. No. 21, PageID# 101), that Kelly's schizophrenia diagnosis satisfies the objective component of his claim, Kelly has not alleged that Hynes or the other MCCC "mental health employee[s]" he mentions were aware of facts from which they could infer a substantial risk to Kelly. (Doc. No. 1, PageID# 3.) The harm that Kelly alleges he suffered because of a failure to adequately address his schizophrenia—including "blank[ing] out" and cutting his arms—took place at the RMSI, not the MCCC. (*Id.* at PageID# 2.) The strongest statement that any MCCC defendant was aware of Kelly's prior mental health episodes is Kelly's

8

allegation that he was transferred to the MCCC "due to ongoing filing [of] grievances and written complaints while at [RMSI]." (*Id.* at PageID# 4.) But awareness of the prior RMSI incidents is not the same as awareness of a current risk of harm to Kelly at the MCCC. Kelly has not alleged that he continued to experience schizophrenic episodes or tried to harm himself once he was transferred to the MCCC. Nor has he alleged that the MCCC employees were aware of a risk that his episodes would recur if he did not receive specific treatment. Courts have found similar deficiencies fatal to deliberate indifference claims. *See Amick v. Ohio Dep't of Rehab. & Corr.*, 521 F. App'x 354, 358–60 (6th Cir. 2013) (affirming 12(b)(6) dismissal of claim that defendants' failure, over almost five months, to provide prisoner medication for schizoaffective disorder amounted to deliberate indifference where plaintiff failed to allege "increasing symp[t]omatology or behavioral problems" during that time); *Cooper v. Montgomery Cty.*, No. 3:13-CV-272, 2017 WL 2841678, at *8–9 (S.D. Ohio June 30, 2017) (granting jail personnel's motion for summary judgment on deliberate indifference claim premised, in part, on their failure to transfer formerly suicidal plaintiff to a mental health facility where there was no evidence that plaintiff engaged in "further self-harming conduct" after a doctor questioned the appropriateness of jail as a treatment setting).

Instead, Kelly alleges that the conditions of his confinement at the MCCC—including 24-hour lock-down and a failure to provide sufficient group therapy—were "not suitable" for him. (Doc. No. 1, PageID# 3.) Kelly alleges that the MCCC is not "even close" to meeting the policy he identifies of assisting mentally ill inmates in "functioning psychosocially and vocationally at the highest possible level" and providing a minimum of four hours of group therapy daily. (*Id.* at PageID# 4.) While those allegations express Kelly's dissatisfaction with the conditions of his confinement at the MCCC, they do not support the inference that the MCCC mental health employees were aware that Kelly's mental illness posed a substantial risk of harm while he was

9

incarcerated there. *See Gunther v. Castineta*, 561 F. App'x 497, 502–03 (6th Cir. 2014) (affirming dismissal for failure to state a deliberate indifference claim against defendant doctor where plaintiff did not allege: (1) that he sought out treatment for his mental illness; (2) that he told the doctor he was suffering as a result of it; (3) that he sent the prison files evidencing his illness; or (4) that the doctor was aware of any of plaintiff's psychotic episodes). Regarding Phillips, Kelly states only that Phillips "allow[ed] such a situation to take place even thou[gh he was] made aware several times." (*Id.* at PageID# 4.) Because the "situation" Kelly alleges Phillips condoned is not a sufficient basis for a deliberate indifference claim, Kelly has failed to state a claim of supervisory liability against him.[6]

## B. Individual Liability

Assuming Kelly seeks to hold Phillips liable, not as a supervisor, but for Phillips's "own action or inaction," *Lane v. Wexford Health Sources*, No. 2:10-CV-389, 2010 WL 4683956, at *4 (S.D. Ohio Aug. 16, 2010), he fails to state a claim for the same reason: Kelly has not alleged that Phillips was aware that Kelly faced a substantial risk of harm at MCCC on account of his mental

---

[6]  To the extent that Kelly seeks to assert a claim against Phillips based on his experience at the NWCC, he cannot do so without following the rules governing amendment of his complaint. But even if the Court were to consider Kelly's allegations concerning the NWCC, they would fail to state a claim against Phillips. *See Harding v. Davidson Cty. Sheriff's Office*, No. 3:13-CV-0449, 2013 WL 5774937, at *3 (M.D. Tenn. Oct. 25, 2013) (considering factual allegations in pro se plaintiff's response to a motion to dismiss to determine whether plaintiff had failed to state a claim despite the fact that those allegations were "not properly factual averments that [could] support a claim for relief"). Kelly has not alleged that Phillips is personally responsible for Kelly's notice-less transfer out of the SLU or the reduction of Kelly's level of care; rather, Kelly has merely alleged that Phillips was "active warden" while those things happened. (Doc. No. 26, PageID# 128.) Any liability for Phillips would therefore have to be based on his status as the supervisor of the NWCC. But because Kelly has not alleged that Phillips "'implicitly authorized, approved or knowingly acquiesced . . .'" in the conduct of his subordinates at the NWCC—Kelly has not even alleged that Phillips was aware of such conduct—Kelly has failed to state a supervisory liability claim. *Grinter*, 532 F.3d at 575 (quoting *Bellamy*, 729 F.2d at 421).

illness.[7] Kelly alleges only that Phillips was repeatedly "made aware" of the "situation" at the MCCC. But the "situation," as Kelly describes it, does not include allegations of a continuing threat of harm associated with his schizophrenia. Phillips's awareness of that situation is not an adequate foundation for the recklessness characteristic of deliberate indifference.

**IV.     Recommendation**

As pleaded, Kelly's allegations against Phillips are insufficient to withstand Phillips's motion to dismiss. The Magistrate Judge therefore RECOMMENDS that Phillips's motion to dismiss (Doc. No. 20) be GRANTED and that Kelly's claims against Phillips be DISMISSED WITH PREJUDICE.

Any party has fourteen days after being served with this report and recommendation to file specific written objections. Failure to file specific objections within fourteen days of receipt of this report and recommendation can constitute a waiver of appeal of the matters decided. *Thomas v. Arn*, 474 U.S. 140, 155 (1985); *Cowherd v. Million*, 380 F.3d 909, 912 (6th Cir. 2004). A party who opposes any objections that are filed may file a response within fourteen days after being served with the objections. Fed. R. Civ. P. 72(b)(2).

Entered this 12th day of February, 2019.

_____
ALISTAIR E. NEWBERN
United States Magistrate Judge

---

[7]     Although Phillips makes this argument in his motion to dismiss (Doc. No. 20), he does not develop it in his accompanying memorandum (Doc. No. 21).

11

Case 3:17-cv-01597   Document 30   Filed 02/12/19   Page 11 of 11 PageID #: 153